UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

    Plaintiff,

v.                                    Case No: 2:23-cv-851-JES-KCD

MARY RHUDE CROSS, as
guardian of A.C., a minor,
J.C., a minor, and L.C., a
minor, ANY UNKNOWN CHILDREN
OF CHAUNDRE K. CROSS,

    Defendant.
_____
MARY RHUDE CROSS, as
guardian of A.C., a minor,
J.C., a minor, and L.C., a
minor,

    Counter-Claimant

v.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

    Counter-Defendant.
_____

## OPINION AND ORDER

This matter comes before the Court on plaintiff Northwestern Mutual Life Insurance Company's Motion for Summary Judgment of Rescission (Doc. #62) filed on June 20, 2025. Defendant Mary Rhude Cross filed an Opposition to Plaintiff's Motion for Summary Judgment (Doc. #70) on August 11, 2025, and plaintiff filed a Reply in Support (Doc. #75) on September 3, 2025.

- 1 -

**I.**

Plaintiff Northwestern Mutual Life Insurance Company (Plaintiff or Northwestern) seeks summary judgment on Count I of the Complaint (Doc. #1) for rescission of a contract of term life insurance (the Policy). If summary judgment is granted, the alternative Count II for a declaratory judgment will be moot. Northwestern also seeks summary judgment on two Affirmative Defenses and the Counterclaim.

Summary judgment is appropriate only when a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. McCreight v. AuburnBank, 117 F.4th 1322, 1329 (11th Cir. 2024). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

**II.**

There are indeed a number of undisputed material facts in

this case. On October 8, 2021, Dr. Chaundre K. Cross (Dr. Cross) completed and signed an Individual Life Insurance Application (the Application) and a Medical History Questionnaire (MHQ) for a term life policy (the Policy) from Northwestern. At the time, Dr. Cross was a practicing radiation oncologist with an annual income in excess of $1.2 million. The Application contained the following statement under "Consent and Declaration":

> The Insured consents to this application, and each signer has read the application and all statements and answers that pertain to them, *and declares that the statements and answers are correctly recorded, complete and true to the best of their knowledge and belief* . . .. Statements and answers in this application are representations and not warranties.

(emphasis added). In the MHQ, Dr. Cross provided information about his medical history and agreed that "[t]he responses provided below are complete, accurate, and truthful to the best of my knowledge and belief. I acknowledge that any inaccurate or misleading statements could result in the reformation, rescission or termination of this policy and impact the payment of future claims. Given Northwestern Mutual's status as a mutual company, inaccurate or misleading statements potentially harm other policyholders." (emphasis removed). On October 19, 2021, Northwestern conducted a telephonic Client History Interview (CHI) with Dr. Cross confirming the accuracy of his written answers.

Adam Heiderman (Heiderman), a Northwestern underwriter,

- 3 -

reviewed the Application, followed up on certain items, and obtained an IRIX pharmacy report. The IRIX report revealed that Dr. Cross had been prescribed at least four undisclosed medications on various dates in 2016, 2018, and 2019. Heiderman determined these undisclosed medications were not material to the risk, and the Policy was issued for $1.4 million.

On or about August 10, 2022, Sara Jo Cross filed for dissolution of marriage from Dr. Cross. On the same day, Dr. Cross left Naples Bay Marina on his boat, the Vitamin Sea and traveled to the Gulf of Mexico, now designated as the Gulf of America. The United States Coast Guard recovered Dr. Cross's boat 16 miles off Sanibel Island, Florida, but his body was never recovered. Dr. Cross was declared "missing at sea" on his Death Certificate.

Northwestern received a claim for benefits under the Policy within the two-year period in which Northwestern could rescind the Policy on the basis of a material misstatement in the Application. By letter dated June 14, 2023, Northwestern notified the Estate of Dr. Cross of its decision to rescind the Policy because Dr. Cross "represented an uninsurable risk given his history of suicide attempts within the past 5 years." A check was enclosed refunding all premiums paid under the Policy, with interest. The check was rejected by the Estate. Northwestern then filed this lawsuit.

Northwestern argues that it can rescind the Policy because the undisputed material evidence proves that the Application

- 4 -

contained material misrepresentations in Dr. Cross's answers to Questions 6, 9, 10, 14. Dr. Cross answered "none" or "no" to questions about certain medical diagnoses, treatment, or advice. Northwestern obtained medical records reflecting events in May 2018 and November 2018, which Northwestern asserts demonstrates the answers were false. Northwestern asserts that if it had been aware that Dr. Cross had attempted suicide, had mutilated his leg requiring surgery, had been confined under the Baker Act, and had been hospitalized, it would not have issued the Policy.

### III.

Rescission of a Florida insurance policy based on a false statement in an application is governed by Fla. Stat. § 627.409, which provides:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have

> issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Fla. Stat. § 627.409(1). "Where a misrepresentation occurs that meets the requirements of § 627.409 the insurer, as a matter of right, may unilaterally rescind." Fabric v. Provident Life & Acc. Ins. Co., 115 F.3d 908, 912 (11th Cir. 1997) (citation omitted). "[S]ubsections (a) and (b) are written in the disjunctive," so Northwestern can show either misrepresentations material to the acceptance of the risk, or that it would not have issued the Policy if the true facts were known. Miguel v. Metro. Life Ins. Co., 200 F. App'x 961, 967 (11th Cir. 2006).

"An insurer seeking to rescind a policy bears the burden to plead and prove the misrepresentation, its materiality, and the insurer's detrimental reliance." Northfield Ins. Co. v. Ayyad Bros. Enters., LLC, No. 2:19-CV-482-FTM-29MRM, 2020 WL 1308195, at *4 (M.D. Fla. Mar. 19, 2020) (citing Griffin v. Am. Gen. Life & Accident Ins. Co., 752 So. 2d 621, 623 (Fla. 2d DCA 1999)). To rescind an insurance contract, Northwestern must plead and prove:

> (1) the character or relationship of the parties; (2) the making of the contract; (3) the existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) that the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) if the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible;

- 6 -

> [and] (6) lastly, that the moving party has no adequate remedy at law.

Metro. Life Ins. Co. v. Liebowitz, No. 22-11794, 2023 WL 4420366, at *7 (11th Cir. July 10, 2023) (quoting Billian v. Mobil Corp., 710 So.2d 984, 991 (Fla. 4th DCA 1998)). Only the third prong – the false representations – is at issue here.

Generally, the misrepresentation in an insurance application must be "material either to the acceptance of the risk or the hazard assumed by the insurer." Indep. Fire Ins. Co. v. Arvidson, 604 So. 2d 854, 856 (Fla. 4th DCA 1992) (citing Fla. Stat. § 627.409 (1989)). "A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed." Omnipol, a.S. v. Worrell, 421 F. Supp. 3d 1321, 1350 (M.D. Fla. 2019), aff'd sub nom. Omnipol, A.S. v. Multinational Def. Servs., LLC, 32 F.4th 1298 (11th Cir. 2022) (citation omitted). "'The test of materiality is not that the company was influenced but that the facts, if truly stated, might reasonably have influenced the company in deciding whether it should reject or accept the risk.'" Singer v. Nationwide Mut. Fire Ins. Co., 512 So. 2d 1125, 1128 (Fla. 4th DCA 1987) (quoting New York Life Insurance Co. v. Kuhlenschmidt, 218 Ind. 404, 33 N.E. 2d 340, 347 (1941)). "The materiality of an insured's misrepresentation is a factual issue where there is a dispute as to the extent of the questions asked by the agent, the

accuracy of the insured's answers and the insured's alleged misrepresentation." Cox v. Am. Pioneer Life Ins. Co., 626 So. 2d 243, 244 (Fla. 5th DCA 1993) (collecting cases).

Such a material misrepresentation need not be intentional. "The misrepresentation need not be fraudulently or knowingly made but need only affect the insurer's risk or be a fact which, if known, would have caused the insurer not to issue the policy or not to issue it in so large an amount." Nembhard v. Universal Prop. & Cas. Ins. Co., 326 So. 3d 760, 766-67 (Fla. 3d DCA 2021). "The plain meaning of the statute indicates that, where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance policy." Cont'l Assur. Co. v. Carroll, 485 So. 2d 406, 409 (Fla. 1986) (citing Life Ins. Co. of Va. v. Shifflet, 201 So. 2d 715, 719 (Fla. 1967)). "Following Carroll, Florida appellate courts and federal district courts applying Florida law have found that misrepresentations on an insurance application are material for preventing recovery when the misstatement obviously affects the risk of insurance." Fernandez v. Bankers Nat. Life Ins. Co., 906 F.2d 559, 565 (11th Cir. 1990) (collecting cases).

The language used by Northwestern in its Application and the MHQ, i.e. "best of my knowledge and belief", imposes "a different

- 8 -

requirement of accuracy." William Penn Life Ins. Co. of New York v. Sands, 912 F.2d 1359, 1364 (11th Cir. 1990). "Where the language an insurance company chooses in its insurance application shifts the focus from a determination of truth or falsity of an applicant's statements to an inquiry into whether the applicant believed the statements to be true, the applicant's answers must be assessed in light of his actual knowledge or belief." Hauser v. Life Gen. Sec. Ins. Co., 56 F.3d 1330, 1334 (11th Cir. 1995), as amended on denial of reh'g, (Sept. 15, 1995) (citations omitted). "[A]n insured's truthful answers on an insurance application according to the best of the insured's "knowledge and belief" do not constitute misstatements within the meaning of section 627.409, Florida Statutes (1993), and therefore cannot provide the grounds for the insurer's rescission of the insurance policy." Green v. Life & Health of Am., 704 So. 2d 1386, 1392 (Fla. 1998). If Northwestern,

> intended to retain the ability to void the contract based on any inaccuracy, it should not have used the "knowledge and belief" qualifying language. Such language would reasonably induce an insurance applicant to believe that they were covered under the policy if they answered the questions to the best of their knowledge and the insurer subsequently issued the policy. To permit an insurer to rescind a policy containing "knowledge and belief" language due to an unknowing misstatement not only contravenes the terms of the contract itself, but is unfair as well.

Sands, 912 F.2d at 1364 n.7. As a result:

> What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but *only* so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception—persons who having witnessed the Apollo landings, still believe the moon is made of cheese.

Sands, 912 F.2d at 1365 (quoting Skinner v. Aetna Life & Cas., 804 F.2d 148, 151 (D.C. Cir. 1986)).

**IV.**

In this case, the question is not whether it is undisputed that the Application contains material and false statements, but whether it is undisputed that Dr. Cross's answers were given to the best of his knowledge and belief. In ruling on a motion for summary judgment, a court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). Even if facts are undisputed, a court should deny summary judgment if reasonable minds might differ on inferences arising from those facts. St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should

not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007). The Court concludes that the evidence in this case is disputed as to whether Dr. Cross gave the answers to the best of his knowledge and belief. Similarly, summary judgment is not permissible as to the counterclaim. (Doc. #54 at ¶¶ 47-59.)

Northwestern also argues for summary judgment on two of the affirmative defenses. The third affirmative defense asserts that the claim for rescission is barred because Northwestern waived any right to rescind the policy or ratified the existence of the Policy by "recognizing its existence and/or acting inconsistently with the claims it is now pursuing to have the Policy rescinded and found *ab initio*." Defendant argues that Northwestern had actual or constructive notice of the true facts of Dr. Cross's medical history. The fourth affirmative defense asserts that the claim is barred by the doctrine of estoppel because Northwestern acted inconsistently with the arguments it is pursuing. (Id. at 44-45.)

"Florida has recognized the theories of estoppel and waiver in the insurance contract setting." LeMaster v. USAA Life Ins. Co., 922 F. Supp. 581, 585 (M.D. Fla. 1996). Waiver is a defense to rescission of a Policy based on a material misrepresentation. Frisbie v. Carolina Cas. Ins. Co., 103 So. 3d 1011, 1013 n.1 (Fla. 5th DCA 2012) (collecting cases). "An insurer can waive its right of recission under Florida law if the following elements are met:

'(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right.'" Wharran v. United of Omaha Life Ins. Co., 645 F. Supp. 3d 1299, 1305 (M.D. Fla. 2022) (quoting Leonardo v. State Farm Fire & Cas. Co., 675 So. 2d 176, 178 (Fla. 4th DCA 1996)). As previously noted, the insurer can "unilaterally rescind" the Policy based on a misrepresentation. Fabric, 115 F.3d at 912. Estoppel may be "used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage." Frisbie v. Carolina Cas. Ins. Co., 103 So. 3d 1011, 1013 n.2 (Fla. 5th DCA 2012) (citation omitted).

As with the substantive claims, summary judgment is not appropriate with the affirmative defenses. Even for facts which are undisputed, the reasonable inferences to be drawn from the facts are disputed. The Court must view all evidence and draw all reasonable inferences in favor of the non-moving party. Tana, 611 F.3d at 772, and must deny summary judgment if reasonable minds might differ on inferences arising from those facts, St. Charles Foods, Inc., 198 F.3d at 819. As stated previously, "[i]f a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should *not* grant summary judgment." Allen, 495 F.3d at 1315 (emphasis added).

Accordingly, it is now

**ORDERED:**

Plaintiff Northwestern Mutual Life Insurance Company's Motion for Summary Judgment of Rescission (Doc. #62) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of November 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:   Parties of record