UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

      Plaintiff,

v.                                Case No:  2:23-cv-851-JES-DNF

MARY   RHUDE   CROSS,   as
guardian of A.C., a minor,
J.C., a minor, and L.C., a
minor;   and   ANY   UNKNOWN
CHILDREN   of   Chaundre   K.
Cross,

      Defendants.

_____

MARY   RHUDE   CROSS,   as
guardian of A.C., a minor,
J.C., a minor, and L.C., a
minor,

      Counter-Claimant,


v.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

      Counter-Defendant.

_____


**FINAL PRETRIAL CONFERENCE ORDER**

    This case came before the Court on January 30, 2026, for a final pretrial conference. The case will be governed by the following:

(1)   The operative pleadings in this case are the Complaint (Doc. #1) in which The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") seeks rescission of a certain life insurance Policy on the life of Dr. Chaundre K. Cross ("Dr. Cross") based on misrepresentations by Dr. Cross in his insurance application (Count I) and seeks a declaratory judgment finding that Dr. Cross died by suicide (Count II);[1] the Amended Answer, Affirmative Defenses, Counterclaim and Renewed Demand For Jury Trial (Doc. #54) in which Mary Rhude Cross ("Cross") opposes the requested relief in the Complaint, raises certain affirmative defenses, and brings a Counterclaim against Northwestern Mutual for breach of the insurance contract for denying the claim for benefits under the Policy, repudiating obligations under the Policy, and trying to rescind the Policy; and the Answer and Affirmative Defenses to Counterclaim (Doc. #55) in which Northwestern Mutual asserts the Policy was void *ab initio* because of the misrepresentations by Dr. Cross and that Dr. Cross died by suicide as affirmative defenses.

---

[1] In the Complaint (Doc. #1), Northwestern Mutual raises its claims for relief against both Cross and "ANY UNKNOWN CHILDREN of Chaundre K. Cross."  At trial, the parties should be prepared to explain whether (1) any unknown children of Chaundre K. Cross remain as a party to this case, and (2) whether the Court should dismiss this defendant.

(2)   Cross filed a **Motion For Jury Trial, To Realign The Parties and to Sit Advisory Jury for Equitable Issues (Doc. #80),** to which Northwestern Mutual's Response and **Motion to Bifurcate Trial (Doc. #89)** was filed.  Both motions are denied.  The case shall proceed as follows: The crux of the case is the Counterclaim breach of contract claim by Cross against Northwestern Mutual.  For simplicity's sake before the jury, Cross will be referred to as the plaintiff and Northwestern Mutual will be referred to as the defendant at trial. Counsel for Cross will proceed first with an opening statement, followed by counsel for Northwestern Mutual's opening statement.  Counsel for Cross will call witnesses first, followed by witnesses called by counsel for Northwestern Mutual.  Closing arguments will be in the following order: Counsel for Cross; Counsel for Northwestern Mutual; Counsel for Cross; Counsel for Northwestern Mutual.

"Even though the 'substantive dimension' of a claim brought in federal court may be governed by state law, 'the right to a jury trial in federal courts is to be determined as a matter of federal law.'" Ford v. Citizens & S. Nat. Bank, Cartersville, 928 F.2d 1118, 1121 (11th Cir. 1991), quoting Simler v. Conner, 372 U.S. 221, 222 (1963).  The case will be tried before a jury as to the breach of contract

claim[2] and the declaratory judgment claim.[3]  The rescission claim will be tried by the Court simultaneously with the jury trial.[4]  The jury will be provided with fairly detailed factual interrogatories for its determination, the answers to which will be binding on the Court as to its determination of rescission.[5]

---

[2] It is clear that a breach of contract claim seeking monetary damages is a legal claim for which a party is entitled to a jury trial.  Stewart v. KHD Deutz of Am. Corp., 75 F.3d 1522, 1526 (11th Cir. 1996).  Northwestern Mutual does not dispute that Cross is entitled to a jury trial on the breach of contract counterclaim. (Doc. #89, p. 2.)

[3] The right to a jury trial in a declaratory judgment action depends on whether there would have been a right to a jury trial had the action proceeded without the declaratory judgment mechanism. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959). While a declaratory judgment action can be either legal or equitable, in this case it is a legal action because "[t]he issue on which Northwestern Mutual seeks declaratory relief (whether Dr. Cross's death was a suicide) is subsumed in Cross's breach-of-contract counterclaim."  (Doc. #89, p. 2, n.1.)  Northwestern Mutual does not dispute that Cross is entitled to a jury trial on the declaratory judgment claim.  (Doc. #89, p. 2.)

[4] "[T]he federal law is clear that an action for rescission is equitable, triable by the court without a jury." Phillips v. Kaplus, 764 F.2d 807, 812 (11th Cir. 1985).  "An action for rescission is an equitable proceeding, and as such it carries no right to a jury trial." Scheurenbrand v. Wood Gundy Corp., 8 F.3d 1547, 1551 (11th Cir. 1993).  A cause of action under Fla. Stat. § 627.409 is a cause of action for rescission. United Auto. Ins. Co. v. Salgado, 22 So. 3d 594, 599 (Fla. 3d DCA 2009) ("The statutory right to rescission is set forth in section 627.409."); Miguel v. Metro. Life Ins. Co., 200 Fed. Appx. 961, 965 (11th Cir. 2006) ("In Florida, rescission of an insurance policy on the basis of a misstatement or omission in the insurance application is governed by Fla. Stat. Ann. § 627.409.").

[5] "Of course, when legal and equitable issues are tried together and overlap factually, the Seventh Amendment requires that "'all findings necessarily made by the jury in awarding [a]

- 4 -

(3)   The parties indicated they will provide an updated joint exhibit list and a witness list(s). Any new joint exhibit list and witness list shall be filed promptly and, in any event, no later than the Wednesday before trial.

(4)   During voir dire the Court intends to read a concise statement summarizing the case to the prospective jurors, followed by the question whether any juror knows anything about the case prior to coming to court.  The parties are encouraged to file a proposed concise statement no later than the Friday before the beginning of trial.

(5)   The Court will select a jury of six jurors plus one "alternate."  At voir dire, each side will have three preemptory challenges, plus one additional challenge for the alternate juror.  As explained at the final pretrial conference, no back-striking will be allowed.  Counsel

---

verdict to [a party on legal claims] are binding on ... the trial court" when it sits in equity.'"  Brown v. Alabama Dept. of Transp., 597 F.3d 1160, 1184 (11th Cir. 2010)(citation omitted.) "When legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both. When a party has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim."  Lincoln v. Bd. of Regents of Univ. Sys. of Georgia, 697 F.2d 928, 934 (11th Cir. 1983)(citations omitted). A portion of the factual issues underlying the breach of contract claim include that Northwestern Mutual breached the contract by attempting to rescind it, which overlap with the facts necessary to establish a right to rescind.

will be allowed to make brief, follow-up inquiry of jurors after the Court concludes its voir dire.

(6)   Cross has not sought permission for counsel's staff or witnesses to bring electronic devices into the courthouse for trial.   If she anticipates the need for electronic devices, such a request should be made by motion.[6]

(7)   Trial will be held beginning Tuesday **February 23, 2026, at 9:00 a.m in Courtroom 6A.**   It is anticipated that trial will take six to eight days.

(8)   The anticipated witnesses at trial are those to be identified in the respective amended witness lists.   No additional witness will be allowed without specific permission of the Court.

(9)   With the consent of the parties, jurors will be allowed to take notes.

(10) Jurors will be allowed to pose questions to any witness by writing the question and handing it to the Court, who will confer with counsel prior to allowing the question.

(11) Northwestern Mutual filed a **Motion in Limine Re: Death Certificate (Doc. #93),** to which Defendants' Response (Doc.

---

[6] The Court previously entered an Order granting in part and denying in part Northwestern Mutual's "Motion to Permit Passage into Courthouse with Electronics and Equipment for Use During Pretrial Conference and During Trial" on January 29, 2026 (Doc. #119.)

#107) was filed. The Death Certificate for Dr. Cross contains a section captioned "CAUSE OF DEATH AND INJURY INFORMATION" which states "manner of death: could not be determined" and "cause of death . . . lost at sea." Northwestern Mutual argues that the "lost at sea" is hearsay and likely to cause unfair prejudice and confusion because the Florida agency issuing the Death Certificate does not have proof that Dr. Cross was actually lost at sea since it did not investigate his disappearance. (Doc. #93, pp. 2-3.) The Death Certificate is a public record excluded from the definition of hearsay by Fed. R. Evid. 803(9) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . A record of a birth, death, or marriage, if reported to a public office in accordance with a legal duty.") There is no dispute that Dr. Cross is not alive. Stating that the manner of death "could not be determined" and the cause of death was "lost at sea" does not support any of the possibilities as to actual cause of death (homicide, suicide, natural, accidental). Neither party may argue that the Death Certificate established one manner of death over another. Fed. R. Evid. 803(8) provides that public records are not excluded by the hearsay rule "unless the sources of information or other

- 7 -

circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8).  The statements on the Death Certificate do not lack trustworthiness – everyone in this case agrees that Dr. Cross is deceased and was "lost at sea," even though they disagree on the manner of his death. The motion is denied.

(12) Cross filed Defendant's **Motion in Limine Regarding Death of Dr. Cross (Doc. #94)** seeking to prohibit introduction of evidence or argument suggesting that Dr. Cross is or could still be alive.  Northwestern Mutual filed a Notice of Non-Opposition (Doc. #108) stating that it does not intend to argue at trial that Dr. Cross is alive.  Accordingly, the motion is denied as moot.

(13) Cross filed her **Motion in Limine Regarding Payout of an Unrelated $1.6 Million Policy (Doc. #95)**, to which Northwestern Mutual filed an Opposition (Doc. #110.) Cross seeks to prohibit anyone from mentioning that Northwestern Mutual had paid out on a prior $1.6 million life insurance policy on Dr. Cross's life.  As Cross concedes, "the fact that Northwestern issued a prior policy for $1.6 million is relevant, . . .." (Doc. #95, p. 5.) The Court concludes that evidence of the payout on this policy is relevant to the case, is not prejudicial, and will not confuse the jury.  Indeed, precluding such

evidence would tend to confuse the jury and leave hanging the obvious question of what happen in regard to that policy.  The motion is denied.

(14) Northwestern Mutual filed its **Motion in Limine Re: Expert Opinions (Doc. #97),** to which Cross filed her Response (Doc. #115.)  Northwestern Mutual seeks to preclude Vera Dolan, Cross's expert witness, from testifying about (a) Northwestern Mutual's decision to issue the Policy and whether that decision was correct; (b) whether Northwestern Mutual can rescind or waived its right to rescind the Policy; and (c) any testimony about post-claim underwriting, fraud, or bad faith.  It seems clear that Ms. Dolan may give testimony on at least some aspects of these topics, and the Court cannot formulate a meaningful order providing guidance in an in limine order. The motion is denied, without prejudice of course to counsel raising objections to specific questions.

(15) Cross filed her **Motion in Limine to Enforce "I Don't Know" Responses of Corporate Representative and Prohibit Speculative Testimony on Underwriting Issues (Doc. #99),** to which Northwestern Mutual filed a response (Doc. #109). In essence, the motion seeks to preclude Adam Heiderman or anyone else from giving testimony contrary to that given by Heiderman in his deposition as a Rule 30(b)(6) designee

- 9 -

of Northwestern Mutual. Cross does not need a gag order to ensure that Heiderman maintains his prior answers. Regardless of Heiderman's presence at trial, Cross may read the Rule 30(b)(6) deposition to the jury. Rule 32(a)(3) (formerly Rule 32(a)(2)) "permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial." Coughlin v. Capitol Cement Co., 571 F.2d 290, 308 (5th Cir. 1978).[7] Additionally,

> an organization's deposition testimony is "binding" in the sense that whatever its deponent says can be used against the organization. But Rule 30(b)(6) testimony is not "binding" in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements. Nothing in the text of the Rule or in the Advisory Committee notes indicates that the Rule is meant to bind a corporate party irrevocably to whatever its designee happens to recollect during her testimony. Of course, a party whose testimony "evolves" risks its credibility, but that does not mean it has violated the Federal Rules of Civil Procedure.

Keepers, Inc. v. City of Milford, 807 F.3d 24, 34-35 (2d Cir. 2015) (footnotes omitted.) If Cross calls Heiderman as a witness, she may confront him with any inconsistencies

---

[7] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

from his deposition testimony, which would become substantive evidence and not just impeachment. The motion is denied.

(16)    Cross filed a **Motion in Limine to Prohibit Testimony by Jason Kestly Outside his Personal Knowledge (Doc. #100),** to which Northwestern Mutual filed a response (Doc. #109.) Kestly was a designated Rule 30(b)(6) witness for Northwestern Mutual who testified as to what the corporation would or would not do if it had known certain things. His testimony is inconsistent with Heiderman's in some respects. Cross argues that a lack of personal knowledge precludes Kestly from testifying to these matters. A corporate representative designated to speak for the corporation on a certain matter can obtain personal knowledge from others within the corporation or corporate documents. Roberts v. Direct Gen. Ins. Co., 337 So. 3d 889, 892 (Fla. 2d DCA 2022); Lloyd v. Midland Funding, LLC, 639 Fed. Appx. 301, 305 (6th Cir. 2016).

> "Obviously it is not literally possible to take the deposition of a corporation; instead, ... the information sought must be obtained from natural persons who can speak for the corporation." Thus, a rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's "position" on the topic. When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it

- 11 -

> represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions.

Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006) (footnotes and citation omitted.)  "Thus, if a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition."  Id. at 434. The motion is denied.

(17)   Cross filed a **Motion to Allow Trial Witnesses to Testify Remotely, or Alternatively to Permit Trial Depositions (Doc. #116),** which was opposed by Northwestern Mutual. Rule 43(a) provides:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a).

"The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as

accident or illness, but remains able to testify from a different place." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. The Court does not find that Cross has presented sufficient good cause or compelling circumstances. The circumstances offered to justify the out-of-court transmission of testimony (e.g. the proffered witnesses' work and school schedules) were entirely foreseeable and yet nothing was done during discovery to alleviate the concern.

The accompanying advisory committee note to Rule 43 further provides, in pertinent part that contemporaneous transcription of live testimony may only occur under compelling circumstances because "[t]he opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Id. Here, the Court will not preclude the jury from properly judging the demeanor of these witnesses in order to accommodate circumstances that came as no surprise to either witness. Accordingly, the Motion (Doc. #116) is denied.

**DONE and ORDERED** at Fort Myers, Florida, this ___3rd___ day of February 2026.

- 13 -

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record